**BROWN BAG SOFTWARE, a California corporation, formerly Telemarketing Resources, Inc., Plaintiff–Appellant,**

v.

**SYMANTEC CORP., a California corporation; John L. Friend, an individual and dba Softworks Development, Defendants–Appellees.**

No. 89–16239.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1991.

Decided April 7, 1992.

Brian Flynn, Sunnyvale, Cal., for plaintiff-appellant.

Gary L. Reback (Mitchell Zimmerman, on the brief), Fenwick & West, Palo Alto, Cal., for defendant-appellee Symantec Corporation.

Paul L. Warner of Jeffer, Mangels, Butler & Marmaro, San Francisco, Cal., for defendant-appellee John L. Friend.

Before: SNEED, TANG and THOMPSON, Circuit Judges.

TANG, Circuit Judge:

Brown Bag Software ("Brown Bag") sued Symantec Corp. ("Symantec") and John L. Friend for infringement of Brown Bag's registered copyright in a computer program for outlining. The district court entered a protective order restricting the access of Brown Bag's in-house counsel to confidential trade information produced during discovery. The district court subsequently granted Symantec's and Friend's motions for summary judgment. Brown Bag appeals the protective order and the grant of summary judgment. We affirm-in-part, vacate-in-part and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1983, Symantec developed and marketed the first successful outlining program, "ThinkTank." By 1985, Symantec had developed and marketed two more outlining programs, "Ready!" and "MORE," each designed for different types of computer hardware.

John L. Friend is an independent computer program designer, doing business as "Softworks Development." Friend designed a new outlining program called "PC–Outline," a program he said was "inspired by" Symantec's ThinkTank program. Friend stated he "borrowed" several of ThinkTank's features for PC–Outline.

In April 1987, Friend sold PC–Outline to Brown Bag. As part of the purchase agreement, Friend warranted that he was not then developing a program that would infringe Brown Bag's newly acquired copyright in PC–Outline. In return, Brown Bag granted Friend a "non-exclusive right" to use 129 pages of computer source code.[1]

Also in 1987, Friend developed and sold an outlining program called "Grandview" to Symantec. Symantec marketed the new program as an updated version of its ThinkTank and MORE programs. Under

---

**1.** "The list of commands written by the programmer is known as *source code* and is typically readable by those conversant in the programming language ("C," BASIC, PASCAL, FORTRAN, etc.). The source code is converted by a program known as a [compiler] into the binary zeros and ones—the *object code* or machine language—to be run by the computer." Wallace Walter, *It Does Not Compute,* Legal Times, June 17, 1991, (Supplement), at 50, 51–52.

the terms of the sale, Friend retained custody of Grandview's source code.[2]

On June 8, 1988, Brown Bag sued Symantec and Friend in federal district court. Brown Bag alleged that Symantec's Grandview infringed Brown Bag's copyright and trademark rights in PC–Outline, in violation of federal law. Brown Bag also alleged several pendent state law claims.

At the beginning of the suit, outside counsel represented Brown Bag. Counsel for all parties stipulated to measures designed to protect Symantec's and Friend's trade secrets divulged in discovery. These trade secrets included the source code for Grandview, developmental plans for Grandview, and the identities of "beta testers," consumer representatives upon whom Symantec market-tested different versions of Grandview. The parties' stipulation restricted access to these materials to "attorneys' eyes only."

On February 17, 1989, Brown Bag's retained counsel withdrew, and Brown Bag's newly hired in-house counsel entered his appearance on behalf of Brown Bag. Symantec moved for a protective order restricting the access of Brown Bag's in-house counsel to the documents labelled "attorneys' eyes only" under the parties' previous stipulation.

On March 8, 1989, after an evidentiary hearing, a magistrate issued an order preventing Brown Bag's in-house counsel from directly viewing the documents. The order provided for Brown Bag's access only through an "independent consultant, legal or otherwise." Specifically, the protective order envisioned an outside consultant hired by Brown Bag who would review the "attorneys' eyes only" documents and advise Brown Bag regarding their relevance. As the magistrate stated at the hearing, "if [it] is the opinion of the outside consultant that in house counsel needs [certain] material in order to pursue the litigation, then there has to be a very specific request, item by item, back to the court for the items that are deemed to be necessary." The magistrate thus did not rule out the possibility of some disclosure of sensitive documents to Brown Bag's in-house counsel.

On April 4 and 5, 1989, Symantec and Friend moved for summary judgment. On April 24, 1989, the district court denied Brown Bag's motion for reconsideration of the magistrate's protective order and for extension of the discovery period. On April 28, 1989, Symantec filed a motion to strike the two declarations Brown Bag had filed in opposition to summary judgment. The district court did not separately rule on these motions.

After the May 5 summary judgment hearing, the district court requested supplementary "letter briefs" from all parties. Symantec's counsel submitted its letter brief on May 11 on behalf of both Symantec and Friend. Brown Bag also submitted its letter brief on May 11. On May 19, Friend filed a "supplemental declaration in support of summary judgment."

On May 24, 1989, the district court granted summary judgment to Symantec and Friend. The court subsequently entered an "Amended Order" granting summary judgment to Symantec and Friend, and dismissing Brown Bag's state law claims. *Telemarketing Resources v. Symantec Corp.*, 12 U.S.P.Q.2d (BNA) 1991 (N.D.Cal.1989). Brown Bag timely appeals the protective order and summary judgment.

## DISCUSSION

I. *Access of Brown Bag's In–House Counsel to Trade Secrets Divulged in Discovery*

■ This court reviews a district court's rulings concerning discovery for an abuse of discretion. *Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 619 (9th Cir.1988).

Rule 26(c) of the Federal Rules of Civil Procedure explicitly authorizes the district court to protect parties from "undue bur-

---

**2.** To the extent that property rights in the source code exist apart from other aspects of Grandview, ownership of the source code is unclear. Friend declared that while a copy of the code was delivered to Symantec, Symantec may only look at the code "under certain conditions of default under our agreement, none of which has occurred."

den or expense" in discovery by ordering "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." The parties agree that source codes, development plans, and beta tester information (all of which Symantec produced to Brown Bag's retained outside counsel under protective stipulation) constitute protectable trade secrets under Rule 26(c). Brown Bag contests, however, the court order requiring Brown Bag to retain an "independent consultant" to view those trade secrets. Brown Bag contends that the court should have permitted its in-house counsel immediate and direct access to those trade secrets.

We have not previously determined when protective orders for trade secrets may be appropriate. The issue entails conflicting interests. On the one hand, parties seeking discovery are entitled to all information "reasonably calculated to lead to the discovery of admissible evidence," Fed. R.Civ.P. 26(b)(1)—an intentionally broad mandate. On the other hand, responding parties are entitled to protection from "undue burden" in discovery, including protection from misuse of trade secrets by competitors. Fed.R.Civ.P. 26(c). These conflicting interests suggest that a balancing test will best resolve protective order disputes such as the one here. Specifically, in this case we must balance the risk to Symantec of inadvertent disclosure of trade secrets to competitors against the risk to Brown Bag that protection of Symantec's trade secrets impaired prosecution of Brown Bag's claims.

According to Brown Bag, preventing its in-house counsel from immediate and direct access to the trade secrets in question also prevents Brown Bag from exercising its due process rights to select counsel and to prosecute its claims. Brown Bag contends that the district court arbitrarily distinguished between outside counsel, whom the court permitted access to the trade secrets, and in-house counsel, whom it denied direct access under the protective order. Brown Bag argues further that the protective order resulted in Brown Bag's inability to oppose summary judgment adequately because in-house counsel's examination of the trade secrets might have produced evidence supporting Brown Bag's opposition.

We turn to *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed.Cir.1984), as the leading authority on protective orders distinguishing between outside and in-house counsel. *See also Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed.Cir.1991) (applying *U.S. Steel* analysis). The *U.S. Steel* court cautioned against arbitrary distinctions based on type of counsel employed, noting that in practice the risk of inadvertent disclosure of trade secrets obtains equally for both kinds of counsel. 730 F.2d at 1468. The *U.S. Steel* court concluded that, to evaluate the risk of inadvertent disclosure, a court should examine the factual circumstances of *any* counsel's relationship to the party demanding access. *Id.* A crucial factor in the *U.S. Steel* case was whether in-house counsel was involved in "competitive decision-making"; that is, advising on decisions about pricing or design "made in light of similar or corresponding information about a competitor." *Id.* at 1468 n. 3.

■ Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained. Further, the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders. Brown Bag and amicus American Corporate Counsel Association contend that the magistrate failed to perform just such a factual inquiry before crafting the protective order in this case.

The record belies this contention. The magistrate in fact held a comprehensive evidentiary hearing prior to issuing the protective order. At the hearing, Symantec's counsel described the extreme sensitivity of the trade secrets at issue. Symantec's counsel further described the potential damage to Symantec should the trade secrets inadvertently become subject to mis-

use by Symantec's competitor, Brown Bag. Brown Bag's counsel did not dispute the dangers inadvertent disclosure posed to Symantec. Instead, Brown Bag's counsel reassured the magistrate that the professional integrity of in-house counsel and his promise to store the trade secret documents in a locked file cabinet in his Brown Bag office sufficiently protected Symantec from inadvertent disclosure.

The magistrate expressly credited in-house counsel's integrity and good faith. The magistrate had to consider, however, not only whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents. As the *U.S. Steel* court suggested, the magistrate therefore inquired into counsel's responsibilities as Brown Bag's sole legal advisor and personnel manager. Brown Bag's counsel stated that he was hired just a few weeks prior to the hearing, that he was one of thirteen or fourteen employees, and that he did not yet know the duties of fellow employees. Brown Bag's counsel agreed that he was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment.

From this testimony, the magistrate reasonably concluded that Brown Bag's counsel's employment would necessarily entail advising his employer in areas relating to Symantec's trade secrets. Knowledge of Symantec's trade secrets would place in-house counsel in the "untenable position" of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal Symantec's trade secrets. For example, Brown Bag's counsel could not advise his employer on beta tester employment or other marketing strategies that might relate to information he had learned about Symantec's beta tester program or its development and promotion plans for Grandview. Brown Bag's in-house counsel was thus involved in the kind of "competitive decisionmaking" that counsels against disclosure under the *U.S. Steel* analysis.

Further, the magistrate weighed not only the risk of disclosure to Symantec, but also the potential impairment of Brown Bag's case against Symantec. The evidentiary hearing revealed that, before in-house counsel appeared for Brown Bag, Brown Bag's former outside counsel had already had over six months in which to study the trade secrets. Brown Bag knew of the court-ordered deadline for summary judgment motions, and had had ample time to develop any admissible evidence it could from the trade secrets divulged to it. Further, none of the trade secrets were themselves relevant to Brown Bag's "look and feel" infringement claim, a claim dependent on comparison of the two published programs. Pursuant to Federal Rule of Civil Procedure 26(b), Brown Bag's counsel argued at the hearing that review of the trade secrets might "lead to the discovery of admissible evidence." Speculation as to what Brown Bag might discover in the future, however, was irrelevant because the deadline for discovery had passed. And, in any event, the magistrate provided means by which Brown Bag's in-house counsel could have obtained access to essential documents. Thus, the magistrate adequately considered the hardship a protective order might impose on Brown Bag's prosecution of its claims.

In sum, the record reveals that the magistrate inquired into the specific factual circumstances of Symantec's and Brown Bag's conflicting interests. The resulting protective order strikes a reasonable balance between those interests by shielding Brown Bag's in-house counsel from personal knowledge of a competitor's trade secrets, but allowing access to information through an independent consultant. The order did not arbitrarily distinguish outside and in-house counsel. Rather, in reaching its decision, the court considered the particular circumstances of Brown Bag's counsel then before it. The same considerations could have applied equally to outside counsel.

█ Finally, Brown Bag's assertion that the protective order unfairly hindered its

opposition to summary judgment is too speculative to establish that the protective order was an abuse of discretion. We stress that Brown Bag failed to demonstrate how the protective order actually could have or did prejudice its case. Brown Bag never attempted to implement the independent consultant method of access to the trade secrets and never argued the method was unduly burdensome. Instead, Brown Bag alleged its unfettered right to the discovery documents and complained of arbitrary discrimination against in-house counsel. Brown Bag's arguments are unsubstantiated. We therefore hold that the court did not abuse its discretion in issuing the protective order.

## II. *Summary Judgment on Brown Bag's Copyright Infringement Claim*

Brown Bag refrains from contending that a disputed issue of fact precluded summary judgment on its copyright infringement claim. Instead, Brown Bag identifies several alleged errors of law it believes entitle it to reversal of summary judgment. We review the summary judgment de novo. *Narell v. Freeman*, 872 F.2d 907, 909 (9th Cir.1989).

To establish a copyright infringement claim, Brown Bag must show that it owns a valid copyright in PC–Outline and that Symantec and Friend copied protected elements of the program. *Narell*, 872 F.2d at 910. Brown Bag's ownership of a valid copyright in PC–Outline is undisputed. To establish the copying element of the claim, Brown Bag intended to show that Symantec and Friend had access to PC–Outline and that relevant portions of Grandview are substantially similar to those portions of PC–Outline in which Brown Bag owns a copyright. *See id.* Because Symantec also concedes that access is not at issue, the defendant's motion for summary judgment focused on Brown Bag's allegations of substantial similarity.

■ Summary judgment for a defendant accused of copyright infringement is appropriate when the plaintiff fails to show a genuine issue regarding whether the ideas and expressive elements of the works are substantially similar. *Frybarger v. International Business Machs. Corp.*, 812 F.2d 525, 528 (9th Cir.1987). This is so because the plaintiff bears the burden of proving that the allegedly infringing work is substantially similar to the work protected by plaintiff's copyright. *Id.* A "genuine issue" exists when the plaintiff provides indicia of "a sufficient disagreement" concerning the substantial similarity of two works "to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *see id.* at 248–52, 106 S.Ct. at 2510–12.

In response to the summary judgment motion brought by Friend and Symantec, Brown Bag submitted the declarations of its president, Sanford B. Schupper, and its computer expert, Ronald Ogg. The Ogg declaration set forth seventeen specific features in PC–Outline and Grandview alleged to be similar. *See Telemarketing Resources*, 12 U.S.P.Q.2d (BNA) at 1994–95. "[U]sing [Ogg's] list as a tool to organize the features which plaintiff asserts are substantially similar in the two programs," *id.* at 1994 n. 3, the district court found that none of the listed features could form the basis for a finding of copyright infringement. *Id.* at 1995–96.

In particular, the district court ruled that one group of features represented a claim of copyright in "concepts ... fundamental to a host of computer programs" such as "the need to access existing files, edit the work, and print the work." *Id.* at 1995. As such, these features, which took the form of four options in the programs' opening menus, were held to be unprotectable under copyright. *Id.*

A second group of features involved "nine functions listed in the menu bar" and the fact that "virtually all of the functions of the PC–Outline program[ ] can be performed by Grandview." *Id.* The district court declared that "these functions constitute the idea of the outlining program" and, furthermore, "[t]he expression of the ideas inherent in the features are ... distinct." *Id.* The court also held that "the

similarity of using the main editing screen to enter and edit data .... is essential to the very idea of a computer outlining program." *Id.*

The third group of features common to PC–Outline and Grandview concerned "the use of pull down windows." *Id.* Regarding these features, the district court made three separate rulings. The court first found that "[p]laintiffs may not claim copyright protection of an ... expression that is, if not standard, then commonplace in the computer software industry." *Id.* Second, the district court ruled that defendants had rebutted the presumption of originality attaching to Brown Bag's registered copyright in PC–Outline's use of pull-down windows, so that there was no copyright in this feature. *Id.* The court supported this finding with Friend's admission that he had based PC–Outline on ThinkTank. *Id.* Finally, the court concluded that the pull-down windows of the two programs look different. *Id.*

Regarding the color schemes of the two programs, the lower court noted that "[p]laintiff admits that fewer than 10 of the 44 default color selections in the [G]randview program are the same as the default color selections in the PC–Outline program." The court also rejected the similar blue backgrounds as a basis for finding infringement, citing functionality, a rule of the Copyright Office, and a decision of this court. *Id.* at 1995–96.

Regarding a fifth group of features, the district court concluded that any resemblance here was the permissible result of Friend's exercise of his rights under the license granted by Brown Bag as part of Friend's sale of PC–Outline to Brown Bag. *Id.* at 1996.

With regard to these five groups of features, the district court concluded that "many of the expressions which plaintiff argues are substantially similar are either not protected under the copyright or were licensed to Mr. Friend." *Id.* Thus, the court ruled, "[p]laintiff may not rely on these features in proving its case at trial." *Id.*

Finally, regarding the two screens presenting the programs' respective opening menus, the court ruled that "the expression[s] of the two screens are not substantially similar, as a matter of law." *Id.* Finding that "[p]laintiff has failed to meet its evidentiary burden on this matter," the district court granted Symantec's summary judgment motion. *Id.*

Brown Bag attacks the district court's decision on four grounds. First, Brown Bag asserts that the district court wrongly rejected two affidavits it submitted in opposing summary judgment. Second, Brown Bag argues that Friend's supplemental declaration supporting summary judgment should not have been considered. Next, the plaintiff contends the district court erred in holding that Symantec had rebutted the presumption of originality adhering in the use of pull-down windows in PC–Outline. Finally, Brown Bag challenges the legal analysis used by the lower court to determine that no genuine issue existed regarding substantial similarity between the two programs. We reject each of these contentions.

## A. Refusal to Consider Brown Bag's Affidavits

■ Symantec objected to Brown Bag's submission of Ronald Ogg's affidavit in opposition to summary judgment because Brown Bag had not disclosed Ogg as an expert witness in response to interrogatories. Brown Bag argues that the district court should have considered Ogg's expert opinion. The district court did use the list of program features contained in Ogg's affidavit to perform its analytic dissection. 12 U.S.P.Q.2d (BNA) at 1994 n. 3. The court did not, however, consider Ogg's opinion itself. *Id.*

■ In this court's leading copyright infringement case, we held that, in assessing the similarity of two works, expert testimony is appropriate in some respects and inappropriate in others. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977). Initially, the line was drawn between comparing ideas embodied in a work, for which

expert testimony was appropriate, and comparing the works' respective expressions of common ideas, for which expert testimony was thought inappropriate. *Id.* Recently, however, we have recognized that the line is more properly drawn between objective and subjective analyses of expression. *Shaw v. Lindheim,* 919 F.2d 1353, 1357 (9th Cir.1990). As such, expert opinion is relevant not only to the analysis of ideas behind two works but also to the objective analysis of expression. *See id.*[3]

Here, the district court relied on the disputed Ogg affidavit to identify objective components for comparison. The district court therefore considered the declaration of Brown Bag's expert to the full extent permitted under our circuit's law. Furthermore, Brown Bag failed to establish that the district court's decision not to credit Ogg's opinion more fully prejudiced Brown Bag.

■ Brown Bag also contends that the district court rejected the declaration of Sanford B. Schupper, Brown Bag's president. Symantec and Friend objected to the admission of exhibits of newspaper articles attached to Schupper's declaration. The district court did not rule on Symantec's and Friend's objection. Neither did it reference Schupper's declaration or the exhibits in its order granting summary judgment. On this record, Brown Bag can point to no rejection or denial of the affidavit to appeal. Even if the district court somehow erred in failing to consider Schupper's declaration, moreover, such error was harmless. Brown Bag has not argued how consideration of Schupper's declaration would have changed the result reached by the district court.

**B. Consideration of Friend's Supplemental Declaration**

■ Brown Bag contends that the district court relied on Friend's supplemental declaration in determining that various features common to both PC–Outline and Grandview were not protected by Brown Bag's copyright. Friend submitted the

declaration after the summary judgment hearing and eight days after the district court's deadline for supplementary "letter briefs." Friend had previously joined Symantec's letter brief. Brown Bag argues that the untimeliness of Friend's declaration and the district court's reliance on it deprived Brown Bag of its due process right to respond.

We review a district court's evidentiary rulings for an abuse of discretion. *Roberts v. College of the Desert,* 870 F.2d 1411, 1418 (9th Cir.1988). Reversal requires a showing of prejudice. *Id.* The district court here did not abuse its discretion by considering the Friend declaration. Brown Bag did not object to the declaration before the district court, nor has it argued on appeal that the declaration was inaccurate. If the declaration prejudiced Brown Bag, Brown Bag should have asserted that concern to the district court.

**C. Rebuttal of Presumption of Originality**

■ Brown Bag was entitled to a presumption of originality in its PC–Outline copyright because the copyright was registered. *See Johnson Controls v. Phoenix Control Systems,* 886 F.2d 1173, 1175 (9th Cir.1989). The district court held that Symantec and Friend rebutted this presumption of originality in PC–Outline's pull-down menus by showing that ThinkTank and other Symantec programs used pull-down menus prior to the development of PC–Outline. Brown Bag argues that, under the *Johnson Controls* case, the district court erred in this holding.

Brown Bag's argument is meritless because the *Johnson Controls* case upon which Brown Bag relies does not apply here. In *Johnson Controls,* defendant contended that plaintiff's copyrighted program was not original because "there are similar programs in use by other companies." 886 F.2d at 1175. We held that this assertion "is insufficient to rebut the presumption [of originality] in the absence of

---

**3.** Ninth Circuit law thus appears to be moving toward the test favored by Judge Sneed in his separate concurrence in which lay and expert testimony are uniformly admissible.

any evidence that [the plaintiff] copied from these other programs." *Id.*

In contrast, here Friend specifically stated that ThinkTank inspired his design of both PC–Outline and Grandview. The district court therefore had evidence from which it could reasonably infer that Friend copied the use of pull-down menus from ThinkTank. In any event, the district court provided two alternative grounds on which it denied copyright protection to Brown Bag's use of pull-down menus. The plaintiff challenges neither of these alternatives on appeal.

### D. Legal Analysis of Substantial Similarity

In the *Krofft* case, we established a two-part test for substantial similarity. 562 F.2d at 1164. Under the original formulation of *Krofft*'s "extrinsic" component, a plaintiff needed to prove only the "similarity of ideas" in the two programs. *Id.* Today, however, the extrinsic test looks at more than just the similarity of ideas. As the district court understood, the extrinsic analysis is " 'an objective test which rests upon specific criteria that can be listed and analyzed.' " 12 U.S.P.Q.2d (BNA) at 1994 (quoting *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988)). The extrinsic test thus has become an "objective ... analys[is] of *expression.*" *Shaw*, 919 F.2d at 1357 (original emphasis); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[E][3], at 13–78.19 to –78.20 (1991) (hereinafter, "Nimmer") (discussing reformulation of *Krofft* analysis achieved in *Shaw*).

To establish infringement of a copyright, the two works in question must also meet the second component of the test set forth in *Krofft*, the "intrinsic test." 562 F.2d at 1164. The intrinsic test, according to *Krofft*, should measure "substantial similarity in expressions ... depending on the response of the ordinary reasonable person.... [I]t does not depend on the type of external criteria and analysis which marks the extrinsic test." *Id.* (citations omitted). In applying the in-

trinsic test, therefore, "analytic dissection and expert testimony are not appropriate." *Id.*

Brown Bag contends that the district court misapplied the intrinsic test because the court improperly performed "analytic dissection" in comparing the expressions of ideas embodied in the two programs. Indeed, the district court explicitly performed "analytic dissection," comparing specific screens, menus, and keystrokes, in part to detect substantial similarity. 12 U.S.P.Q.2d (BNA) at 1995–96. The court performed the dissection at Brown Bag's behest and in response to a list of allegedly substantially similar features Brown Bag proffered in opposition to summary judgment.

Brown Bag's argument ignores the evolution of the "extrinsic" component of the *Krofft* analysis. Properly understood, the district court's analysis was not a misapplication of the "intrinsic test," but a proper application of the revised "extrinsic test." Under the reformulated extrinsic test, we mean to perpetuate "analytic dissection" as a tool for comparing not only ideas but also expression. Thus, it was not error for the district court to use "analytic dissection" in comparing the expressions of the two programs. Specifically, the district court properly compared the expressions embodied in the two screens presenting the programs' respective opening menus. *See* 12 U.S.P.Q.2d (BNA) at 1996.

The district court's analytic dissection of the five groups of features involving unprotected or unprotectable work was also proper, but for an entirely different reason. This analysis had nothing to do with assessing substantial similarity, and therefore was not subject to the old limitations *Krofft* imposed on the use of analytic dissection. Instead, as to these groups, the district court applied analytic dissection for the purpose of determining "whether similarities [between the programs] result from unprotectable [or unprotected] expression." *Data East*, 862 F.2d at 208. In this application, analytic dissection is used not for the purposes of comparing similarities and identifying infringement, but for

the purpose of defining the scope of plaintiff's copyright.

 This point bears emphasis. Analytic dissection is relevant not only to the copying element of a copyright infringement claim, but also to the claim's ownership element. One aspect of the ownership element is the copyrightability of the subject matter and, more particularly, the scope of whatever copyright lies therein. *See* Nimmer § 13.01[A]. To the extent a plaintiff's work is unprotected or unprotectable under copyright, the scope of the copyright must be limited. *See, e.g., Data East,* 862 F.2d at 209 (holding that, because "the similarities result from unprotectable expression," "[t]he lower court erred by not limiting the scope of [plaintiff's] copyright protection").[4] Thus, where two works are found to be similar without regard to the scope of the copyright in the plaintiff's work, *Data East* teaches that the source of the similarity must be identified and a determination made as to whether this source is covered by plaintiff's copyright. It is this process in which the district court engaged with regard to the five groups of features found to be unprotected or unprotectable by Brown Bag's copyright in PC–Outline. Again, this use of analytic dissection was proper.

 Brown Bag further argues that the district court became so engrossed in its analytic dissection that it neglected to evaluate the "overall look and feel" of the two programs for substantial similarity. Stated differently, Brown Bag contends that the district court failed to consider the "intrinsic" component of the *Krofft* test, which involves a subjective analysis of similarities in expression. *See Shaw,* 919 F.2d at 1357. Even assuming this is true, we find no reversible error because the record fails to include any evidence indicating that Brown Bag requested the district court to make this analysis. Although the district court "entertained an in-court demonstration of the two programs and ... carefully reviewed submitted copies of relevant outlining programs," 12 U.S.P.Q.2d (BNA) at 1992, no such evidence was ever included as part of Brown Bag's opposition to Symantec's summary judgment motion. Therefore, there is no reason we should expect the district court to have made the analysis Brown Bag now requests.

 Finally, Brown Bag argues that, because PC–Outline and Grandview shared a common idea—specifically the idea of an outlining program—summary judgment is precluded by our decision in *Shaw.* We held in *Shaw* that "satisfaction of the extrinsic test creates a triable issue of fact in a copyright action involving a literary work." 919 F.2d at 1359.

In response, Symantec argues we should distinguish *Shaw* from the instant case on the basis that the *Shaw* rule applies by its own terms only to literary works. We decline to distinguish *Shaw* for that reason, however, because at least some computer programs bear significant similarities to literary works. On the scant record available to us in this case, we cannot conclude as a matter of law that the programs at issue here, or computer programs in general, are so nonliterary or so limited in their variety of expression as to avoid application of the rule announced in *Shaw.*

 We nevertheless reject Brown Bag's argument on the basis that it misapprehends the nature of the "extrinsic" test following *Shaw.* If the rule in *Shaw* was applied without recognizing that the extrinsic test now includes some analysis of expression, *Shaw* would ring "the death-knell in the Ninth Circuit for defense summary judgments based on purported absence of substantial similarity." Nimmer § 13.-

---

4. The degree to which unprotected or unprotectable features must be eliminated from a comparison of two works is difficult to say. Although copyright protection is not afforded to certain elements of a work, such limitations "must not obscure the general proposition that copyright may inhere, under appropriate circumstances, in the selection and arrangement of unprotected components." Nimmer § 13.-03[F][5], at 13–78.44 n. 342; *accord Feist Publications, Inc. v. Rural Telephone Serv. Co.,* —— U.S. ——, 111 S.Ct. 1282, 1289, 1294, 113 L.Ed.2d 358 (1991); *see* Nimmer § 13.03[F][5], at 13–78.45 n. 345 (discussing Ninth Circuit cases).

03[E][3], at 13–78.20. But, as we have discussed, after *Shaw* the extrinsic test examines not only similarity of ideas, but also objective similarity of expressions.

■ In particular, the extrinsic test for literary works requires analytic dissection of several "objective components of expression," *Shaw*, 919 F.2d at 1361, within a literary work such as plot, theme, characters, and dialogue. *Id.* at 1356–57. Similarity of these objective components in two literary works logically gives rise to a triable issue of similarity. *Id.* at 1357. Likewise, computer programs are subject to a *Shaw*type analytic dissection of various standard components, *e.g.*, screens, menus, and keystrokes. Because the district court found that Brown Bag made no showing of similarity along these lines with regard to copyrighted components of PC–Outline, summary judgment was not precluded by the rule announced in *Shaw*. *See also* Nimmer § 13.03[E][3], at 13–78.20 ("given *Shaw*'s reformulation of the extrinsic test, the decision is better viewed as standing for the unremarkable proposition that when objectively speaking a triable case of expressive similarity exists, the case must be sent to the trier of fact; but when no such objective argument is possible, summary judgment will lie.") (footnotes omitted).[5]

III. *Brown Bag's Federal Trademark/Trade Dress Claim*

■ In its complaint, Brown Bag alleged two federal claims, copyright infringement and "false designation of origin," a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). For its Lanham Act claim, Brown Bag alleges that "Defendants … falsely promote Grandview as being an upgrade, derivative or improvement upon PC–Outline in a manner to suggest a connection with [Brown Bag]. … There is a likelihood of confusion, mistake or deception."[6] [Complaint at 9, ER at F.]

■ The district court dismissed Brown Bag's pendent state claims because it had granted summary judgment to Symantec and Friend on Brown Bag's federal claims. The district court's order granting summary judgment does not even mention the Lanham Act claim, however. If the district court intended to grant summary judgment on the Lanham Act claim as well, its order granting summary judgment on the infringement claim presents no rationale for it. On this record, it appears that the district court intended to dispose of all federal claims on summary judgment, but overlooked the Lanham Act claim.

Symantec argues that we should infer the district court intended to grant summary judgment on the Lanham Act claim and affirm that judgment on the basis of the record. In support of its motion for summary judgment, Symantec informed the district court that there was "no evidence that Symantec or its agents falsely promoted Grandview … in [a] manner as to suggest a connection with [Brown Bag]." In response, Brown Bag failed to offer any evidence pertaining to the Lanham Act claim, and therefore failed to carry its evidentiary burden in opposing summary judgment. *See* Fed.R.Civ.P. 56(c); *Shaw*, 919 F.2d at 1359. Because the evidence of record is one-sided in favor of Symantec, Symantec argues that we should infer and affirm the district court's

---

5. The federal copyright act authorizes the award of attorney's fees and costs to the prevailing party. 17 U.S.C. § 505. Anticipating reversal of summary judgment, Brown Bag requests its fees and costs. We deny the request.

6. The claim which Brown Bag alleges is a Lanham Act false designation of origin claim, distinguishable from a "reverse passing off" claim. In a "reverse passing off" claim under the Lanham Act, a defendant markets a copied product as its own. *See Shaw*, 919 F.2d at 1364. A reverse passing off claim is therefore dependent upon a successful infringement claim. *Id.* (declining to recognize reverse passing off claims in all events). Because Brown Bag alleged in its complaint a false designation of origin claim, however, Brown Bag need not have shown that Symantec and Friend infringed Brown Bag's copyright in PC–Outline in order to state a claim under the Lanham Act that Symantec and Friend falsely promoted Grandview as an updated version of PC–Outline. Summary judgment on Brown Bag's copyright infringement claim, therefore, did not compel summary judgment on its Lanham Act claim.

summary judgment for Symantec on the Lanham Act claim.

Symantec's argument is pragmatic, assuring as it would a final end to the litigation given that Brown Bag's other claims of error are without merit. Symantec asks this court, however, to infer a district court's decision on an entire claim and to rewrite a district court judgment to include the inferred decision. We decline to take such liberties with a district court's intentions and judgments. Instead, we conclude that it was Symantec's and Friend's responsibility to clarify the district court's judgment and to save themselves needless litigation over a possible oversight. We therefore remand the Lanham Act claim for such clarification and for further proceedings as the district court deems necessary in light of our opinion.

IV. *Friend's Notice of Joinder in Symantec's Appellate Brief*

■ Symantec's and Friend's appellate briefs were due in this court July 25, 1990. Symantec submitted its brief on that date. On July 30, 1990, Friend filed a "Notice of Joinder in Brief of Appellee Symantec." Brown Bag moved this court to strike Friend's notice as untimely and to reverse summary judgment as to Friend for his failure to oppose the appeal. Brown Bag cited no authority for its requested action. Neither Friend nor Symantec responded to Brown Bag's motion.

The only sanction authorized by the Federal Rules of Appellate Procedure for an appellee's failure to file a timely brief is refusal to hear the appellee at oral argument. Fed.R.App.P. 31(c). The limited nature of this sanction coincides with our duty to affirm the judgment on any ground fairly supported by the record. *See Wabol v. Villacrusis*, 908 F.2d 411, 424 n. 22 (9th Cir.1990); *United States v. Bergmann*, 836 F.2d 1220, 1223 (9th Cir.1988). Because Brown Bag appealed the judgment for Friend, and because the record supports judgment for Friend even in the absence of his joinder or briefing, we affirm judgment for Friend as well as for Symantec. We therefore perceive no prejudice to Brown

Bag in permitting Friend's joinder, although we by no means condone untimely filings. Accordingly, the motion to strike is denied.

CONCLUSION

The protective order limiting Brown Bag's access to Symantec's trade secrets struck a reasonable balance between the parties' interests. We affirm that order as a proper exercise of discretion. The record fails to support Brown Bag's objections to summary judgment on its copyright infringement claim. We therefore affirm that judgment for both Symantec and Friend. The record does not support an inference that the district court granted summary judgment on the Lanham Act claim, however. We therefore remand that claim for further proceedings consistent with this opinion.

The judgment of the district court is AFFIRMED–IN–PART and VACATED–IN–PART, and the case is REMANDED.

SNEED, Senior Circuit Judge, Concurring Separately:

I concur in Parts I and III of Judge Tang's opinion, and in the judgment with respect to Part II.

My difference as to Part II is rooted in my belief that *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir.1990), provides a poor analytic structure by which to determine the substantial similarity of an allegedly infringing computer program. This is a message already dispatched by District Judge Orrick of the Northern District of California in *Broderbund Software Inc. v. Unison World Inc.*, 648 F.Supp. 1127, 1136 (1986). He preferred Circuit Judge Becker's approach in *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). That approach was described by Judge Orrick as "an integrated substantial similarity test pursuant to which both lay and expert testimony would be admissible." *Broderbund*, 648 F.Supp. at 1136.

I remain convinced, however, that even were we to travel the road pointed to by Judge Orrick, we would end up precisely where we now are. The trip would be unnecessary; therefore, I concur in the result reached in Part II.