2025 Tex. Bus. 19



# The Business Court of Texas, 11th Division

WESTLAKE LONGVIEW CORP. and § 
WESTLAKE CHEMICAL OPCO LP, § 
    *Plaintiffs,* §    Cause No. 24-BC11B-0023 
v. § 
EASTMAN CHEMICAL CO., § 
    *Defendant.* § 

═══════════════════════════════════════

## OPINION ON MOTION FOR PROTECTIVE ORDER

═══════════════════════════════════════

### *Syllabus*[*]

*This opinion addresses the applicable legal tests and evidentiary burdens for deciding whether discovery material may be designated as "Attorney's Eyes Only" under a protective order and whether in-house counsel should be granted access to AEO-designated material. Both inquiries require a balancing of the parties' competing interests based on specific, non-conclusory evidence that has not yet been presented in this case.*

### OPINION

¶1    On May 1, 2025, this Court granted in part and denied in part defendant Eastman Chemical Co.'s motion for protective order. This opinion follows.

---

[*] This syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.

**Background**

¶2     This dispute between plaintiffs Westlake Longview Corporation and Westlake Chemical OpCo LP (collectively, Westlake) and Eastman arises out of a contract under which Eastman sells Westlake ethylene, which Westlake uses at its polyethylene plants in Longview, Texas. The parties agree that a protective order is needed in this case and on all provisions of a proposed protective order save one: whether the protective order should include a separate "Attorney's Eyes Only" (AEO) designation, and if so, whether AEO material should be disclosed to in-house counsel. After a hearing, the Court entered a protective order containing an AEO provision but held that the parties had not shown which information merited an AEO designation or whether specific counsel should have access to AEO-designated materials. This opinion addresses the basis for the Court's ruling and the applicable evidentiary burdens.

**The Protective Order**

¶3     The Court entered a two-tiered protective order containing (1) a "Confidential" designation that protects material from disclosure to people not involved in this litigation and (2) an AEO designation that protects material from disclosure even to the other parties, including their in-house counsel. It requires that a party designating information as AEO have "a good-faith belief that the information is of such a proprietary and commercially sensitive nature that disclosure to any-

2

one other than the opposing party's outside counsel could (i) materially harm the disclosing party's business or (ii) materially impact any competitive advantage that the disclosing party may have." It also states that such information may include confidential research and development, financial, technical, marketing, or other sensitive trade secret information.

¶4     The Court added terms to the proposed protective order to mitigate some of Westlake's concerns. First, a party designating material as AEO must provide a redacted version of AEO documents with only the AEO-designated information redacted, so that all other information in the document may be disclosed to the other parties. Second, a party designating the identity of a customer as AEO must specify the scope of the designation—specifically, whether the AEO designation extends to the mere fact that the entity is or has been a customer of the party.[1]

¶5     The protective order does not govern whether information included in a court filing will be sealed—a separate inquiry governed by Texas Rule of Civil Procedure 76a.

---

[1] For example, if the fact that an entity is a customer of Eastman is publicly known, Eastman may not treat that information as AEO, but the customer's identity could still qualify as AEO as it relates to the specifics of that customer's deal terms with Eastman. In such situations, counsel for Westlake would be able to discuss the entity with Westlake as an Eastman customer, so long as they did not link the customer to any other AEO-designated information. This is intended to ameliorate any inconvenience to counsel from not being able to disclose the identity of entities that counsel may, for example, want to depose. However, some inconvenience may be necessary to adequately protect confidential information.

## Analysis

¶6     The key difference between the Confidential and AEO designations is that AEO-designated information may not be shared with the parties, including their in-house counsel. Despite the prevalence of two-tiered protective orders, there is limited authority in Texas regarding when material may be treated as AEO and when in-house counsel may be denied access to it. There is, however, a large body of federal case law addressing these issues, which provides useful guidance.[2]

### A.     The "Attorney's Eyes Only" Designation

¶7     The principal purpose of AEO designations is to "prevent a *party* from viewing the sensitive information while nevertheless allowing the party's *lawyers* to litigate on the basis of that information."[3] AEO designations are perhaps most common in cases involving trade secrets,[4] but AEO protection may be available for other commercially sensitive information.[5]

---

[2] *Compare* TEX. R. CIV. P. 192.6(b) *with* FED. R. CIV. P. 26(c). When Texas and federal law are similar, the Texas Supreme Court often considers federal precedent, including in the context of protective-order disputes. *See Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex. 1987); *see also In re Weekley Homes, L.P.*, 295 S.W.3d 309, 317–19 (Tex. 2009); *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992).

[3] *In re The City of New York*, 607 F.3d 923, 935 (2d Cir. 2010).

[4] *E.g.*, *id.* at 935 (observing that AEO designations are "routine" in cases involving trade secrets).

[5] *See, e.g.*, *Moore v. Battelle Energy All., LLC*, No. 4:21-CV-00230-CRK, 2023 WL 1767391, at *5 (D. Idaho Feb. 3, 2023) ("An [AEO] category can be appropriate for sensitive information beyond trade secrets, such as research, development, financial, or other commercial information."); *All Plastic, Inc. v. SamDan LLC*, No. 20-CV-01318-NYW, 2021 WL 2979005, at *2 (D. Colo. Feb. 15, 2021) ("While a protective order may be appropriate where a trade secret or other confidential information is at issue, the existence of a trade secret is not required."); *see also In re Ford Motor*

¶8     When the parties to the suit are competitors, courts often allow AEO designations for commercially sensitive information such as customer lists.[6] In its response to Eastman's motion for protective order, Westlake asserted that it is not a competitor of Eastman because it is a buyer of ethylene, not a seller. But at the hearing, Eastman pointed out that Westlake's affiliated entities *are* competitors of Eastman, and Westlake admitted that these affiliates share a legal department with Westlake. As a result, if discovery in this case is shared with Westlake and its in-house counsel, it will effectively be shared with a competitor. This is thus the kind of suit in which AEO designations may be appropriate.

¶9     Likewise, the information Eastman seeks to shield from Westlake is customer and sales information. The parties agree that the discovery in this case implicates Eastman's ethylene sales contracts with third parties. Eastman seeks to protect the identity of its customers as well as the pricing and other commercial

---

*Co.*, 211 S.W.3d 295, 299–300 & n.2 (Tex. 2006) (stating protective order's AEO designation was not limited to trade secrets and noting that federal law does not limit protective orders to trade secrets). At this time, Eastman has not attempted to prove that the information it seeks to protect qualifies as trade secret specifically.

[6] *See, e.g.*, *Rodo Inc. v. Guimaraes*, No. 22-CV-9736 (VSB), 2022 WL 17974911, at *1 (S.D.N.Y. Dec. 27, 2022) (listing cases); *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2020 WL 5230744, at *2 (N.D. Ill. Sept. 2, 2020) (listing cases); *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *8 (E.D. La. Apr. 5, 2004) (observing that two-tiered protective orders "are commonplace where parties are competitors" and discussing cases).

terms in these sales contracts. This is precisely the kind of commercially sensitive information courts have frequently afforded AEO protection.[7]

¶10    Thus, the Court concluded that Eastman demonstrated a sufficient basis for including an AEO provision in the protective order. However, even when dealing with the disclosure of commercially sensitive information to competitors, courts deciding whether any specific information is entitled to AEO protection must balance the risk of harm from disclosure against an opposing party's need for

---

[7] *See, e.g., Nanjing CIC Int'l Co. v. Schwartz*, No. 20-CV-7031EAW, 2023 WL 6958787, at *5 (W.D.N.Y. Oct. 20, 2023) ("[C]ourts commonly find that sales information is entitled to protection as either AEO or confidential."); *MBA Eng'g Inc. v. Matrix Tr. Co.*, No. 3:20-CV-01915-E, 2023 WL 2619172, at *3 (N.D. Tex. Mar. 23, 2023) (upholding AEO designation for pricing information); *All Plastic*, 2021 WL 2979005, at *2 (listing cases in which courts allowed AEO designations for sales and profit information); *In re Novartis & Par Antitrust Litig.*, No. 2:19-MC-00149, 2019 WL 5722055, at *10 (E.D. Pa. Nov. 5, 2019) (listing cases in which courts have allowed production of sales documents under AEO protection); *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co.*, No. 4:16-CV-00427-DCN, 2017 WL 4839375, at *2 (D. Idaho Oct. 26, 2017) ("[C]ourts have generally viewed sales data as trade secrets or confidential information."); *Oncology Tech, L.L.C. v. Elekta, Inc.*, No. SA-12-CA-314-H, 2013 WL 12169359, at *10 (W.D. Tex. Feb. 5, 2013) (upholding AEO designation for third-party contracts in dispute between competitors and noting that "it is reasonable for a company to take precautions to prevent a competitor from knowing the specific provisions, terms, and language of its agreements"); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 246 (D. Kan. 2010) (observing that AEO designations are "usually reserved for more sensitive information," including "competitive pricing, customer lists, or competitive business financial information"); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 247 (E.D.N.C. 2010) (upholding AEO designations for sales and supply-chain information in suit between competitors); *Avocent Redmond Corp. v. Rose Elecs., Inc.*, 242 F.R.D. 574, 576 (W.D. Wash. 2007) (allowing AEO designation for "customer identification, sales prices to specific customers, profit margins and prospective marketing strategies, and highly sensitive technical information"); *A Major Difference, Inc. v. Wellspring Prods., LLC*, 243 F.R.D. 415, 418 (D. Colo. 2006) (entering protective order with AEO designation for customer lists and other proprietary data in dispute between competitors); *Asch/Grosbardt Inc. v. Asher Jewelry Co.*, No. 02 CIV. 5914 (SAS), 2003 WL 660833, at *3 (S.D.N.Y. Feb. 28, 2003) (requiring AEO protection for customer information); *Seaga Mfg., Inc. v. Fortune Res. Enters., Inc.*, No. 99 C 50332, 2002 WL 31399408, *4 (N.D. Ill. Oct. 24, 2002) (allowing discovery of customer list subject to AEO protection); *see also* n.6, *supra*.

the information to properly litigate the case.[8] Texas courts apply a similar test when considering trade-secret privilege under Texas Rule of Evidence 507: "the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party."[9]

¶11 Courts balancing competing interests for AEO purposes employ a burden-shifting paradigm that is likewise similar to the one Texas courts use when evaluating trade-secret privilege.[10] The designating party bears the initial burden of proving that the designated information is entitled to AEO protection and must put forward evidence that (1) the information is trade secret or other confidential research, development, or commercial information and (2) there is a risk the party will suffer harm if the information is disclosed to the other party.[11] Such evidence must be specific and concrete; vague, conclusory allegations will not suffice.[12]

---

[8] *See, e.g., S.D. Bd. of Regents v. Green Thumb Commodities, LLC*, No. 4:23-CV-04205-KES, 2025 WL 673931, at *2 (D.S.D. Mar. 3, 2025); *Toyota Motor Sales, U.S.A., Inc. v. Allen Interchange LLC*, No. 22-CV-1681 (KMM/JFD), 2024 WL 3617141, at *12 (D. Minn. Aug. 1, 2024), *aff'd,* No. 22-CV-1681 (KMM/JFD), 2024 WL 4524481 (D. Minn. Oct. 18, 2024); *Rodo*, 2022 WL 17974911, at *1; *Doc's Dream, LLC v. Dolores Press, Inc.*, No. CV 15-2857-R (PLAX), 2018 WL 11311293, at *5 (C.D. Cal. Feb. 14, 2018); *Bussing v. COR Clearing, LLC*, No. 8:12CV238, 2015 WL 4077993, at *2 (D. Neb. July 6, 2015).

[9] *In re Cont'l Gen. Tire,* 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding).

[10] *Cont'l Gen. Tire,* 979 S.W.2d at 613. Notably, however, when Rule 507's privilege applies, trade secret may be exempt from production entirely—even AEO protections may be insufficient. *See In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 593 (Tex. 2009); *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 731–32 (Tex. 2003).

[11] *See, e.g., S.D. Bd.*, 2025 WL 673931, at *2; *Doc's Dream*, 2018 WL 11311293, at *5; *Bussing*, 2015 WL 4077993, at *2.

[12] *E.g., Alter Domus, LLC v. Winget*, No. 23-10458, 2024 WL 4541554, at *7 (E.D. Mich. Oct. 22,

7

¶12 If the designating party meets its initial burden, the burden shifts to the opposing party to demonstrate why the party needs access to the information to prosecute or defend the suit and why providing the information to the party's outside counsel and experts will not suffice.[13] The party must demonstrate the specific purposes for which it needs the information; a bald assertion that the party needs the information to advise and direct outside counsel is inadequate.[14] Typically, the

2024) (party seeking AEO designation "must detail the alleged harm it is likely to suffer absent the requested protection with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" (quoting *Xoran Holdings, LLC v. Luick*, No. 16-13703, 2019 WL 13029920, at *4 (E.D. Mich. May 19, 2019); cleaned up)); *Clark v. McDonough*, No. CV 23-553, 2024 WL 2701611, at *6 (W.D. Pa. May 24, 2024) (AEO designation "often is limited to cases where a party has demonstrated good cause for the designation by articulating concrete and specific harms that would result from de-designation" (quoting *Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTD Ltd.*, No. 3:16-CV-621, 2018 WL 1635153, at *3 (M.D. Pa. Apr. 5, 2018)); *Nanjing*, 2023 WL 6958787, at *5 ("To demonstrate entitlement to AEO treatment, 'the disclosing party must provide specific demonstrations of fact, supported where possible by affidavits and concrete examples.'" (quoting *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 2022 WL 3365069, *3 (W.D. Ky. 2022) (internal quotations omitted)); *Hunzelman v. Perry's Rests. Ltd.*, No. 1:21-CV-01056-RP, 2023 WL 114064, at *1 (W.D. Tex. Jan. 4, 2023) ("To restrict discovery to attorneys' eyes only, a party has an initial burden to 'describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact.'" (quoting *Perez v. Bodega Latina Corp.*, No. EP-19-CV-00360-DCG, 2021 WL 3272211, at *6 (W.D. Tex. July 30, 2021)); *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (stating that "[c]onclusory statements—including 'broad allegations of potential harm' or competitive injury—are insufficient" (quoting *Chi. Mercantile Exch., Inc. v. Tech. Rsch. Grp., LLC*, 276 F.R.D. 237, 241 (N.D. Ill. 2011)).

[13] *See S.D. Bd.*, 2025 WL 673931, at *2 (if party seeking AEO designation meets its initial burden, "the burden shifts to the opposing party to prove the information is necessary and relevant to the action"); *Doc's Dream*, 2018 WL 11311293, at *5 (once party has shown need for AEO protection, burden shifts to opposing party "to show that the information is relevant to a party's claims or defenses or the subject matter of the lawsuit and is necessary to prepare the case for trial").

[14] *See, e.g.*, *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D. Cal. 2007) (holding that declaration that party needed to "know the identity of Syntech's suppliers and customers [in order to] assist, advise and direct Nutratech's counsel with the direction and conduct of discovery, and with litigation strategy" was insufficient); *M-Edge Accessories LLC v. Amazon.com Inc.*, No. MJG-11-3332, 2013 WL 12241898, at *3 (D. Md. May 14, 2013) (rejecting argument of

party must show that the denial of access will actually prejudice its presentation of the case, rather than merely increase the difficulty of managing the litigation.[15]

¶13  Here, the parties did not present sufficient evidence to enable the Court to perform this balancing test, though they still may do so if a party chooses to challenge an AEO designation under the protective order.

## B.  In-House Counsel Access

¶14  Deciding whether to grant in-house counsel access to AEO-designated material likewise requires a balancing of the parties' competing interests.[16] As an initial matter, this Court has no reason to question the integrity and credibility of Westlake's in-house counsel and presumes that all counsel will actively endeavor to abide by their legal and ethical obligations with respect to any material produced subject to the protective order. But there remains a risk of inadvertent disclosure

---

party opposing AEO designation that access was necessary "to fully and effectively prosecute its claims" and "promote an educated analysis of possible settlement" and stating there was "no reason to doubt that outside counsel can competently represent plaintiff").

[15] *See, e.g.*, *Humana, Inc. v. Cave Consulting Grp., Inc.*, No. 3:13-CV-759-JGH, 2015 WL 13845801, at *3 (W.D. Ky. Feb. 20, 2015), *aff'd,* 2015 WL 13766676 (W.D. Ky. Oct. 8, 2015) (quoting *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 1:09-CV-00560-LJO-BAM, 2012 WL 6160468, at *5 (E.D. Cal. Dec. 11, 2012))).

[16] *See In re Com. Metals Co.*, No. 05-16-01214-CV, 2017 WL 3712169, at *2 (Tex. App.—Dallas Aug. 29, 2017, no pet.) (holding protective order adequately addressed defendant's confidentiality concerns while balancing plaintiff's need for someone inside company to view materials as a surrogate in-house counsel). The Court addresses only in-house counsel here because that is the scope of the parties' dispute. Federal courts have generally held that the same test applies whether the counsel at issue is in-house or outside counsel, though recognizing that in-house counsel may be subject to different pressures and risks. *See, e.g.*, *In re PPG Indus., Inc.*, 944 F.2d 912, 1991 WL 191142, at *1 (Fed. Cir. 1991) ("[In-]house counsel are subject to pressures different from those which outside counsel face, if only that their own economic well-being is inextricably bound up with their employer's.").

9

as well as the reality that even if in-house counsel does not disclose information, they may still unconsciously take it into account when providing legal advice on matters outside of this litigation.[17] Thus, the Court must balance the risk that Westlake's in-house counsel may inadvertently disclose or use the information for competitive decision-making against Westlake's need for its in-house counsel to have access to the information.[18]

### 1. The Risk of Inadvertent Disclosure or Misuse

¶15    To conduct this inquiry, the Court must have evidence about the role of each Westlake attorney at issue and how that role affects the risk of inadvertent

---

[17] *See, e.g.*, *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (discussing risk of inadvertent disclosure for any lawyer); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468–69 (Fed. Cir. 1984) (same); *Uniloc 2017 LLC v. Cardo Sys., Inc.*, No. 2:18-CV-00510-JRG, 2019 WL 13472203, at *3 (E.D. Tex. May 22, 2019) ("When in-house counsel has a role in competitive decisionmaking, simultaneous access to an opposing party's confidential information may thus place that counsel 'in the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information.'" (quoting *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000)).

[18] *See, e.g.*, *Deutsche Bank*, 605 F.3d at 1380 ("Even if a district court is satisfied that [a risk of inadvertent disclosure] exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice."); *see also Brown Bag*, 960 F.2d at 1470; *Uniloc 2017*, 2019 WL 13472203, at *2; *Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 272 (D. Mass. 2016) (quoting *TiVo Inc. v. Verizon Commc'ns, Inc.*, No. 2:09–CV–257, 2010 WL 9430466, at *2 (E.D. Tex. June 15, 2010)); *see also* n.8, *supra*.

disclosure or competitive use of Eastman's AEO-designated material. The mere fact that an attorney is in-house is not determinative.[19]

¶16    Typically, the risk of inadvertent disclosure is evaluated in terms of whether the attorney is involved in the client's "competitive decision-making"— i.e., whether the attorney's activities, association, and relationship with the client are of a nature that involves the attorney advising the client on or participating in its business decisions, as to which the AEO information may have bearing.[20] The analysis focuses on "in-house counsel's actual (not nominal) role in the affairs of the company" and may extend beyond an attorney's involvement in competitive decision-making, including any "association and relationship with those in the corporate hierarchy who are competitive decision makers" and "any other factor that enhances the risk of inadvertent disclosure."[21]

---

[19] *See, e.g.*, *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991).

[20] *See, e.g.*, *Deutsche Bank*, 605 F.3d at 1378–80; *Brown Bag*, 960 F.2d at 1470–71; *Matsushita Elec.*, 929 F.2d at 1579; *U.S. Steel,* 730 F.2d at 1465; *Uniloc 2017*, 2019 WL 13472203, at *2– *4; *Koninklijke Philips*, 167 F. Supp. 3d at 272.

[21] *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407–08 (N.D. Ill. 2006). One court has identified the factors for this analysis as including: (1) the attorney's involvement in competitive decision-making, (2) the degree of such involvement, (3) the scope of the attorney's responsibilities within the company, (4) the sensitivity of the confidential information, (5) the potential harm from inadvertent disclosure or misuse, and (6) whether the litigation is especially complex, or whether it is at an advanced stage, such that restricting in-house counsel's access to documents and forcing a party to rely on newly retained counsel would result in extreme and unnecessary hardship. *Sony Comput. Ent. Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 382 (S.D. Fla. 2008).

¶17    Examples of evidence that courts have relied on in denying attorney access to AEO information include:

- an attorney's testimony that he was "responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment";[22]

- an attorney's testimony that he previously served as both general counsel and outside counsel for the company, had served an affiliate in a purely business capacity, played a major role in the company's core business—patent acquisition, litigation, and licensing—and worked directly under the company's owner;[23]

- evidence of the frequency and intensity of interactions between in-house counsel and company leadership and the critical nature of the litigation to the company's future;[24]

- evidence that the attorney was director of legal and business affairs for the company, responsible for supervising its efforts to investigate and stop unlawful conduct relating to its intellectual property, and reported directly to company's general counsel, even though she did not handle product development contracts or other corporate matters;[25] and

- evidence that an attorney oversaw and advised the company's business leaders on strategy for litigation of the same type as the pending case, even though the attorney was not involved in pricing, product design, sales, marketing, distribution, or day-to-day operations.[26]

---

[22] *Brown Bag*, 960 F.2d at 1471.

[23] *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, No. CIV.A. 6:07-CV-346, 2008 WL 5634214, at *3–4, 8 (E.D. Tex. Mar. 14, 2008).

[24] *Autotech Techs.*, 237 F.R.D. at 410.

[25] *Sony Comput.*, 249 F.R.D. at 382–83.

[26] *Ecolab Inc. v. IBA, Inc.*, No. 22-CV-479 (ECT/DTS), 2024 WL 3650464, at *1 (D. Minn. May 19, 2024).

¶18    Examples of evidence that courts have relied on in granting attorney access to AEO information include:

- an attorney's unrebutted testimony that, although he had "regular contact" with competitive decision-makers, none of his duties involved pricing, design, marketing, or other similar strategic decisions, neither he nor his team attended meetings where those decisions were discussed, and his role focused on purely legal issues and employee benefit plans;[27]

- evidence that an attorney had no financial interest in the company, her past nonlegal involvement in the company was incidental and largely dated, and her legal services to the company did not involve competitive decision-making, even though she had a familial relationship with the company owners;[28] and

- evidence that the attorney was located in Ohio, the suit involved accusations of improper business practices in Puerto Rico, and the attorney was "largely removed" from the company's Puerto Rico operations.[29]

## 2. The Need for Access

¶19    Likewise, the Court must consider evidence of the hardship, if any, that Westlake would suffer if its in-house counsel cannot access the information at issue. For example, the Federal Circuit held in *U.S. Steel* that denying access to in-house counsel was "an extreme and unnecessary hardship" when the in-house attorneys were divorced from competitive decision-making and the party's outside counsel were newly retained in an "extremely complex" case "at an advanced

---

[27] *Matsushita Elec.*, 929 F.2d at 1579–80.

[28] *PSI Marine, Inc. v. Seahorse Docking LLC*, No. 3:24-cv-163 (SVN), 2024 WL 5077849, at *2–3 (D. Conn. Dec. 11, 2024).

[29] *Philips Med. Sys. Puerto Rico, Inc. v. Alpha Biomedical & Diagnostic Corp.*, No. CV 19-1488 (BJM), 2021 WL 150411, at *3 (D.P.R. Jan. 15, 2021).

stage" of litigation.[30] Similarly, the district court in *Jane St. Group, LLC v. Millennium Management LLC* held that the burden outweighed the risk when the parties agreed that the in-house counsel was not involved in competitive decision-making and the case was "complex" with "highly technical matters" as to which in-house counsel's insights would be particularly important.[31] Conversely, numerous courts have held that requiring a party to rely on competent outside counsel does not, alone, create an undue or unnecessary burden.[32] Unsurprisingly, vague, generic, and conclusory assertions that access is needed to advise the party on litigation matters are inadequate.[33]

¶20 Here, counsel for Eastman and Westlake have expressed conflicting beliefs as to whether Westlake's in-house counsel engage in competitive decision-making, but neither party has yet presented any evidence on the issue. Likewise, they have presented no evidence regarding specific reasons Westlake's in-house counsel needs access to specific AEO information and why outside-counsel access

---

[30] 730 F.2d at 1468.

[31] *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24 CIV. 2783 (PAE), 2024 WL 2833114, at *2 (S.D.N.Y. June 3, 2024).

[32] *See ST Sales*, 2008 WL 5634214, at *8 ("Courts have found time and again that requiring a party to rely on its competent outside counsel does not create an undue or unnecessary burden."); *see also, e.g., Jane St.*, 2024 WL 2833114, at *2; *Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. CV 15-53-RGA, 2016 WL 2904592, at *5 (D. Del. May 18, 2016); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000).

[33] *See, e.g., Teva Pharm. USA, Inc. v. Corcept Therapeutics, Inc.*, No. 24-CV-03567-NW (VKD), 2025 WL 822696, at *2 (N.D. Cal. Mar. 14, 2025); *Hill Phoenix, Inc. v. Classic Refrigeration Socal, Inc.*, No. 819-CV-00695-DOCJDEX, 2019 WL 11519088, at *3 (C.D. Cal. Aug. 13, 2019).

is inadequate. Thus, the Court concluded that the evidence did not support granting AEO access to any of Westlake's in-house counsel. The parties may provide such evidence in the future, if a party moves to modify the protective order to allow specific in-house attorneys access to AEO material.

Date signed: May 16, 2025

_____

Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division, *sitting by assignment
in the Eleventh Division*