Seth NORTHROP, Plaintiff,

v.

INVENTIVE COMMUNICATIONS, L.L.C., Defendant.

No. 8:00CV30.

United States District Court, D. Nebraska.

Oct. 30, 2000.

Richard H. Moeller, Berenstein, Moore Law Firm, Sioux City, IA, for Plaintiff.

Robert J. Bothe, William F. Hargens, James M. Sulentic, Patrick C. Stephenson, McGrath, North Law Firm, Omaha, NE, for Defendant.

## ORDER

BATAILLON, District Judge.

This matter is before the Court on defendant's statement of appeal (Filing No. 43) from the magistrate's order (Filing No. 42). The plaintiff had filed a motion to compel discovery (Filing No. 25) and the defendant had filed a motion for protective order (Filing No. 29). The magistrate found that both motions should be granted in part and denied in part.

Plaintiff and Dr. Dennis Jensen ("Jensen"), the founder of the defendant Inventive Communications, created a business relationship between the two of them. Initially, plaintiff helped Jensen with computer applications for the Wayne Public Schools in Wayne, Nebraska. Thereafter, plaintiff created the idea of an Internet Library to be used by the public schools. At some point they decided to market nationally to public schools and plaintiff entered into a contract to do so.

In December of 1998, plaintiff and defendant entered into an Assignment of Intellectual Property Interests, wherein plaintiff gave up all of his rights to the Internet Library in return for three percent of all gross revenues from the sale or licensing of the Internet Library. In July of 1999 the parties had a disagreement, and plaintiff resigned. Plaintiff is currently employed in California with an internet environmental company.

The basis of plaintiff's lawsuit is that the Internet Library currently used by defendant was created by plaintiff. He is requesting an accounting and the royalties that are due to him. The defendant contends that the library (now known as INET Library) is not the one created by the plaintiff. Therefore, no royalties are due and owing. The magistrate received argument and evidence regarding the differences between the two alleged versions of the library. She concluded that there were differences between the two libraries, but she found that whether these differences were substantial was a question for the trier of fact.

In the motion to compel, plaintiff has asked for the underlying programming code. He contends that he is the only one in a position to determine if the current library is basically the same program that he created for the defendant. He argues that this evidence is crucial and relevant to the case.

The defendant contends that plaintiff should not be allowed to have the programming code. Defendant argues that an outsider's knowledge of the current code could place the defendant at great competitive risk. This is the only product made by the defendant. If knowledge of this programming code were to be misused, defendant argues that the effects could be devastating. Further, defendant argues that the magistrate should have appointed a special master to compare the two libraries and determine whether they are the same or different.

The magistrate concluded, and I agree, that the programming code is very relevant to this lawsuit. In fact, it probably goes to the essence of the entire suit. The magistrate correctly pointed out, though, that the defendant has a compelling interest in protecting his programming code. Use of a special master, as noted by the magistrate, presents tremendous problems, because the plaintiff and defendant cannot agree upon the "original Northrop library" to compare to the current library.

The magistrate concluded that she must attempt to balance the need of the plaintiff

and the dangers posed to the defendant. She ordered the following:

1. Plaintiff and counsel must sign a protective order and confidentiality order with regard to the source code;

2. Plaintiff must sign a restrictive covenant agreeing not to compete during the pendency of the lawsuit, appeals, and for one year thereafter;

3. Plaintiff must file a bond in the amount of $500,000.00 in the event he violates paragraphs one or two herein;

4. Upon completion by the plaintiff of paragraphs one through three above, defendant is to submit the current source code for the current version of the Internet library.

I find that the magistrate's order in this regard shows a careful balancing of the needs and interests of both parties. See, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992). Consequently, I affirm and adopt the order (Filing No. 42) of the magistrate.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1. The magistrate's order (Filing No. 42) is hereby affirmed and adopted in its entirety;

2. Plaintiff's motion to compel (Filing No. 25) is granted in part and denied in part;

3. Defendant's motion for a protective order (Filing No. 29) is granted in part and denied in part; and

4. The parties shall have sixty days from receipt of this Order to comply with the magistrate's order.

### REPORT AND RECOMMENDATION

JAUDZEMIS, United States Magistrate Judge.

Pending before me is plaintiff's First Motion for Order Compelling Discovery (# 25) and defendant's Motion for Protective Order (# 29). The court has reviewed the parties' briefs with respect to the motions, as well as evidence indices (# 30 & # 36). An evidentiary hearing and oral argument was held August 21, 2000, at which time the court viewed defendant's presentation of the current INET Library and what defendant claims constituted the plaintiff's internet library as of December 1998.

Based upon the evidence and argument, I find that both motions should be granted in part and denied in part.

### FACTUAL BACKGROUND

This dispute arises out of an employment agreement and business relationship between plaintiff Seth Northrop ("Northrop") and Dr. Dennis Jensen ("Jensen"), the founder of defendant Inventive Communications, L.L.C. ("Inventive"). During the initial association between Northrop and Jensen, Northrop was a contract employee for the Wayne Public Schools in Wayne, Nebraska where he worked on computer applications. Jensen was the superintendent of the Wayne Public Schools. During his employment, Northrop developed the idea of an Internet library which could be used by public schools. The appeal of the library was that it would have links to Internet sites which had already been viewed and approved as content appropriate and age appropriate for public school students.

At some point in their relationship, Jensen and Northrop decided to create an independent business for the purpose of marketing to public school systems nationwide the Internet library. The initial employment contract (Second Amended Answer and Counterclaim, Ex. A) began July 1, 1998 and covered the 1998–1999 year. At some time during the initial phase of the relationship, the Wayne Public Schools asserted an ownership interest in the Internet library. That claim was settled by the agreement of Inventive to provide the Internet library and all future updates free of cost to the Wayne Public Schools.

Sometime in December of 1998, Northrop and Inventive entered into an Assignment of Intellectual Property Interests (Second Amended Answer and Counterclaim, Ex. C). While this is neither an exhaustive analysis of the agreement's terms nor its legal effect, generally, Northrop transferred to Inventive in perpetuity all of his rights in the Internet

library. In consideration, Inventive agreed to pay Northrop a royalty in the amount of three percent of all gross revenues derived from the sale or licensing of the Internet library. Critical to the current dispute is the fact that the Assignment did not ever define the entity in existence at the time which the Assignment referred to as the Internet library. Through counsel at the oral argument, Northrop represented to the court that he has no copy of the December 1998 Internet library. During that same argument, Inventive represented that it is trying to reconstruct the library to the best of its ability.

In May of 1999, a Professional Agreement of Employment (Second Amended Answer and Counterclaim, Ex. B) was entered into between Inventive and Northrop. Northrop's employment was increased to full time and substantial other conditions were mutually imposed. Shortly thereafter, a philosophical difference of opinion arose between Jensen and Northrop. That difference of opinion ultimately led to Northrop's resignation. He ended all association with Inventive in July of 1999. He is currently employed in the State of California by an Internet environmental company. (# 36 at Ex. 8).

## LEGAL ANALYSIS

Plaintiff claims that the Internet Library currently being marketed by Inventive was created and developed by him. He seeks an accounting and damages for royalties he claims are due under the above-described assignment. Inventive denies that the INET Library it is currently marketing is the one originally created by defendant. Defendant has further filed a counterclaim based upon the Assignment because NetLibrary, Inc. has filed a Notice of Opposition in the Trademark Trial and Appeal Board of the United States Patent and Trademark Office. NetLibrary, Inc. claims that defendant's use of the name "INETLIBRARY" infringes upon NetLibrary, Inc.'s trademark "NETLIBRARY."

The parties dispute the nature of the relationship, if any, between the December 1998 Northrop creation which was assigned to Inventive and the current INETLIBRARY be-

ing marketed by Inventive. A substantial part of the evidentiary hearing held August 21, 2000 was a demonstration of the purported differences. For example, in the December 1998 version of what Inventive claims is Northrop's Internet Library (hereinafter referred to as "Northrop Library") all of the search topics are pre-set. For example, in order to search for articles on Creighton University basketball using the Northrop Library, one would first need to access the general category "Sports" and then through the process of elimination, narrow the search. In addition, the only interactive function in the Northrop Library was an e-mail function which allowed a user to suggest additional links to be added to the library by sending an e-mail directly to Northrop.

Inventive argues that, in contrast, the current version of the INET Library allows an individual to type in a specific topic for search or to search using general categories. Using the earlier example, a user could either search under the category of "Sports" or type in the words "Creighton Basketball" to specifically narrow the search. The INET Library also includes more interactive features which provides assistance to educators in building a curriculum and allows an educator to communicate directly with an expert on a specific topic.

It was obvious from the demonstration that there are differences between the Northrop Library and the INET Library. Whether those are substantial differences that affect the merits of the case remains for the trier of fact. It is, however, not disputed by either party that what is available and visible on the screen does not reveal the underlying programming code. Defendant contends that the programming code has been completely changed since Northrop left, and what Inventive is now marketing is no longer Northrop's library. Northrop claims that he is the only individual who can make the determination whether there is a substantial change in the programming code, primarily because he did not keep a discreet copy of either the Internet Library as it existed in December of 1998 nor the form of the Internet Library when he left in July of 1999. For this reason, the parties are unable

to use the services of a special master because there is no agreed upon "original Northrop Library" in existence to use as a comparison.

The posture of the current case demonstrates the relevance and importance of the programming code, both to Northrop's original complaint and to the counterclaim. However, my inquiry cannot end with this finding of relevance. Equally apparent is the serious danger to Inventive of providing its programming code to a former employee who has initiated suit. The INET Library is Inventive's only product. Even if Northrop is the originator of the underlying programming code, there are obviously changes which have been made to it which he would discover when the current code was revealed to him. If Northrop is not the inventor of the current INET Library's programming code, revealing it to him would give him an invaluable trade secret in addition to giving him the training to be able to create an equivalent system.

It is necessary for me to balance these very real dangers against the obvious relevance of the programming code to the issues in the lawsuit. I find that that balance can be most appropriately met by the following techniques. First, the restrictive covenant prohibiting Northrop from competing against Inventive which was contained in the second employment agreement has now expired. I find that the restrictive covenant should be continued throughout the life of the lawsuit and for one calendar year thereafter. This would give Inventive the benefit of the bargain memorialized in the employment contract in exchange for providing its current programming code to Northrop. Second, it is necessary for Northrop to post a sizeable bond. Any violation of confidentiality agreement by Northrop would provide Inventive an opportunity to recoup at least some of its losses. Finally, Northrop and his attorney will be required to sign a confidentiality agreement which will prohibit any other person from reviewing the programming code without specific written approval of Inventive or court order.

**IT IS ORDERED** that the first Motion for Order Compelling Discovery (# 25) and Mo-

tion for Protective Order (# 29) are granted in part and denied in part as hereinafter follows:

1. Plaintiff Seth Northrop and his counsel are to sign a protective order and confidentiality order with respect to Inventive's source code;

2. Plaintiff Seth Northrop is to sign a restrictive covenant prohibiting his employment in an area in competition with defendant during the pendency of the lawsuit, any appeals, and for one year thereafter;

3. Plaintiff Seth Northrop is to file a bond with the court in the amount of $500,000 against any violation of the protective and confidentiality order and/or the restrictive covenant;

4. Upon the completion of the above-entitled conditions by plaintiff, defendant is to submit to plaintiff's counsel the source code for the current version of the Internet Library.

Sept. 12, 2000.